O. H. DUNBAR, *as Guardian of Wm. H. Grigsby*, v.
F. F. SEVERANCE *et al.*

1. CONVEYANCE, *Setting Aside—Tender.* The rule is, that when parties seek to set aside a conveyance on the ground of fraud, they must return, or offer to return, all they have received under it. There must be a tender or offer to return the amount received, or there must be a just and valid excuse shown for failure of tender.

2. COSTS, *Taxation of—Error not Shown.* In an action of such character, in which the trial court decreed the costs against the plaintiff, and the evidence is not contained in the case-made, this court cannot say that such a taxation of costs is erroneous, because it is not shown that there was a just and valid excuse for want of tender, and error must be affirmatively shown.

*Error from Barber District Court.*

ACTION to set aside a conveyance of land. A conditional judgment for the plaintiff, *Dunbar*, as guardian, was rendered at the February term, 1889. The plaintiff brings the case here. The opinion states the facts.

*W. S. Denton,* for plaintiff in error :

The only theory upon which the plaintiff would be liable for costs in this action is the failure to make a tender of the amount received by the plaintiff's ward for the land before bringing suit. The petition alleges that the plaintiff did not know the amount his ward had received, but offered to pay the same upon it being ascertained by the court, and, in fact, it was the first step taken after the commencement of the trial. The plaintiff did all in his power, and all that the law required of him. *Street Rly. Co. v. Baum,* 4 Pac. Rep. (Cal.) 916.

The answer of the defendants controverted all the allegations of the plaintiff's petition, and in it was no offer to reconvey upon payment to them of the sum received by plaintiff's ward. Not until the beginning of the trial did they disclose the sum paid out.

Opinion by SIMPSON, C.: The plaintiff in error, Dunbar, as guardian of the person and estate of one Wm. H. Grigsby, a person of unsound mind, commenced this action in the district court of Barber county, to set aside a conveyance of land by Grigsby to Severance and Gamble, on account of the insanity of the grantor. The petition averred that the defendants in error induced Grigsby, when he was of unsound mind and wholly incapacitated from entering into any contract, to convey to them a valuable tract of land, consisting of 150 acres, of the value of $2,000; that the defendants in error paid Grigsby, at the time of the conveyance, a small sum of money, the exact amount being unknown to the plaintiff, and assumed an incumbrance of $400. This consideration is alleged to be grossly inadequate, and that the exact amount paid at the time of the execution of the conveyance is not known to the plaintiff. He prays, therefore, that it be ascertained by the court, and he offers to pay said amount into court for the use of the defendants. At the trial, as soon as the amount of the cash payment was ascertained, the plaintiff paid the same into court. The case was tried by a jury, and a general verdict rendered for the plaintiff, and the following special interrogatories were answered:

"1. Prior to December 21, 1887, were W. L. Gamble and F. F. Severance partners, engaged in buying and selling real estate in Barber county, Kansas? They were not.

"2. When and where did W. L. Gamble first meet Wm. H. Grigsby? At his office, December 21, 1887.

"3. When and where did F. F. Severance first meet William H. Grigsby? In Hazelton, prior to December 21, 1887.

"4. At the time that William H. Grigsby first met W. L. Gamble, were W. L. Gamble and F. F. Severance partners in the purchase and sale of real estate? They were not.

"5. When and where did F. F. Severance and W. L. Gamble receive the deed to the land in controversy, and from whom? In W. L. Gamble's office, December 22, 1887, from W. H. Grigsby, through Seymore Peck.

"6. What amount did F. F. Severance pay toward the purchase of the said land? $100.

"7. What amount did W. L. Gamble pay toward the purchase of the said land? $100.

"8. What amount was W. L. Gamble to receive as commission for selling the said land? 5 per cent. commission.

"9. What amount did he receive? $35.

"10. Did F. F. Severance have the benefit of any of the commission received by W. L. Gamble from William H. Grigsby? No.

"11. Has the plaintiff in this action established or proved that F. F. Severance and W. L. Gamble had knowledge of any unsoundness of mind, or insanity, of W. H. Grigsby at the time of the delivery of the deed by Grigsby to them? No.

"12. If you answer the last question in the affirmative, state the facts from which you find that Gamble and Severance, at the time of receiving the deed, had knowledge that William H. Grigsby was insane, or of unsound mind.

"13. Do you know from the evidence, that at the time of receiving the deed from William H. Grigsby, that the said Gamble and Severance, or either of them, imposed upon the said William H. Grigsby, and by false representations, fraud, or undue influence, secured the same from him? No.

"14. At the time that William H. Grigsby executed the deed to the defendants, Severance and Gamble, was he able, without promptings from Gamble or Severance, or any other person, to recollect the property he was deeding, and knew the consideration that he was receiving therefrom, and at the time did he understand the business that he was transacting with the parties? No.

"15. Prior to the 21st day of December, 1887, had William H. Grigsby been attending to the ordinary duties and affairs connected with his business? Yes.

"16. At the time that William H. Grigsby delivered the deed to the defendants in this action, left to act upon his own free will, did he have sufficient intelligence to understand the nature of the transaction? No.

"17. Did the plaintiff in this action, or anyone by him authorized, tender, before the commencement of the action, to these defendants a sum of money, and request the defendants to relinquish, by deed or otherwise, their interest in the land in controversy? No.

"18. Did the plaintiff in this action, or anyone by him authorized, after the commencement of this action, tender to the defendants any money, and request that the defendants relinquish their right or interest in this land? Yes.

"19. If you answer the last question in the affirmative, state whether the money was actually produced, the amount that was produced, and the time that it was produced, and state further whether or not, at the time of the production of the money, the plaintiff requested the defendants to relinquish, by deed or otherwise, their interest in this land? It was; $165; 21st day of February, 1889.

"20. On the 4th day of January, 1888, was William H. Grigsby resident in Cowley county, Kansas, or in Barber county, Kansas? Barber county, Kansas.

"21. At the time that William H. Grigsby executed and delivered the deed to the land in controversy to the defendants, did either Gamble or Severance have knowledge that he was of unsound mind, or insane? No.

"22. Did William H. Grigsby, during the year 1887, have lucid intervals? No.

"23. At times, during the year 1887, was William H. Grigsby of unsound mind? Yes.

"24. If you answer the last question in the affirmative, state what proportion of the time during that year William H. Grigsby was of unsound mind, and what proportion of the time he was sane? 1st, 12 months; 2d, none.

"25. Was William H. Grigsby of unsound mind at the time he made and delivered the deed to the defendants, Severance and Gamble? Yes.

"26. At the time William H. Grigsby executed and delivered the deed to the land in controversy to the defendants, Severance and Gamble, was he capable of attending to his ordinary affairs, and did he know what he was doing and the result of his act? No."

The following special interrogatories by plaintiff in error were submitted and answered, as follows:

"1. Did W. L. Gamble and Frank Severance have reasonable grounds to believe that William H. Grigsby was of unsound mind or incapable of transacting business at the time they purchased this land? No.

"2. Did the plaintiff, O. H. Dunbar, offer to repay the defendants the money they paid to William H. Grigsby? Yes [in court].

"3. Did the defendants ever at any time offer to reconvey, on the payment to them of the money they had paid to William H. Grigsby? No.

"4. Did either of the defendants ever inform the plaintiff

the exact amount received by Wm. H. Grigsby? Not until February 20, 1889."

On the general and special verdicts, the court rendered a decree setting aside the conveyance, conditioned that the plaintiff pay to the defendants $165, with interest at 7 per cent. per annum, and all costs taxed in the case, amounting to $142.20. The guardian brings the case here for review, and complains of the decree in these two respects: that the costs were erroneously taxed to the plaintiff; and that the court had no right to make their payment a condition precedent to the cancellation of the conveyance, the power of the trial court being exhausted when a judgment for costs was rendered against the plaintiff. Whether the costs were properly taxed depends upon the necessity of a demand for a reconveyance, and a tender of the amount paid for the conveyance, before suit was brought.

It is said in the case of *Jeffers v. Forbes*, 28 Kas. 181 :

" The rule is, that where parties seek to set aside a convey-ance on the ground that it is fraudulent, they must return, or offer to return, all they have received under it. A party who has received certain consideration, no matter how small or inadequate, for any contract or conveyance, must return that consideration, or offer to return it, before he is entitled to have the contract or conveyance set aside. He cannot, while retaining the benefits of a transaction, repudiate it as null and void."

Many cases are cited in the decision in support of this rule, and many more are collected in the note at the end of the report of the case. Therefore there must be a return, or an offer to return, when the suit is brought. In other words, there must be a tender before suit is commenced, or the peti-tion must show a legal and valid excuse for the failure to tender the amount received under the conveyance that is claimed to be fraudulent; the rule being that a return must be made, and the exception being that an offer to return is sometimes sufficient. When and under what circumstances

is an offer to return sufficient? In the case of *O'Dell v. Burn-ham*, 21 N. W. Rep. (Wis.) 635, it is said:

"Where the plaintiff offers in the complaint [petition] to return the consideration received, the objection that he did not, before bringing the action, tender such money, cannot be sustained. The court can protect the rights of all parties, and the failure to make such tender can affect only the question of costs."

When a judicial inquiry is necessary for the ascertainment of the sum to be repaid, an offer to refund such sum as may be decreed is sufficient. (*Street Rly. Co. v. Baum*, 4 Pac. Rep. [Cal.] 916.) So that the sole inquiry is, Does the record develop facts sufficient to excuse tender of the amount received by Grigsby from these defendants in error at the time the conveyance was delivered? The deed is not a part of the record. The petition recites that a copy of it is attached as an exhibit, but for some reason it is not copied into the case-made. Hence we do not know what consideration is expressed in the conveyance. The petition avers that the amount paid is not known to the pleader, but there is a general denial by way of answer, and the record does not contain the evidence. An amended answer of the defendants, filed two days before the trial, avers that they paid $200 and assumed a mortgage for $550 in consideration of the conveyance; but their first answer makes no mention of the amount of their cash payment. Neither answer complains of the fact that no tender was made. As we have said, the evidence is not here, and under these circumstances there is not such an affirmative showing that the trial court erred as to justify either a reversal or a modification of the decree in respect to the costs. It is such a case as comes under the general rule, and if the plaintiff in error falls within the exception above noted, the record ought to clearly show the facts, in order to justify us in disturbing the decree rendered below.

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.